## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| FIRST HEALTH GROUP CORP., | ) | CASE NO. 1:22-cv-02090 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | |
| MEDICAL MUTUAL OF OHIO, INC., | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER RESOLVING ECF NOS. 16, 18,** |
| Defendant. | ) | **21 & 22** |

Before the Court are three motions filed by Defendant Medical Mutual of Ohio ("MMO") and one motion filed by Plaintiff First Health Group Corp. ("First Health"). On June 16, 2023, MMO filed a Motion for Leave to File an Amended Answer and Third-Party Claim, *Instanter* (ECF No. 16). On June 23, 2023, First Health responded to that Motion in two ways: first, First Health filed a Motion for Partial Summary Judgment against MMO on the topic of liability under the parties' contract (ECF No. 18); and second, First Health formally opposed MMO's Motion (ECF No. 20).

Following a status conference on June 27, 2023, MMO moved the Court to reassign this case to Judge Ruiz, who is overseeing litigation that MMO believes is related to this action. (ECF No. 21). MMO also moved for an extension of the fact discovery cutoff and case management schedule to account for the newfound complexity of this case and permit its proposed third-party defendant the opportunity to engage in discovery. (ECF No. 22). Thereafter, these four pending motions were fully briefed: First Health opposed MMO's motion to extend the case management dates and the motion to reassign this matter to Judge Ruiz on July 12, 2023. (ECF Nos. 24 & 25). On July 18, 2023, MMO filed reply briefs in support of both motions. (ECF Nos. 26 & 27). On

1

July 24, 2023, MMO opposed First Health's Motion for Partial Summary Judgment. (ECF No. 28). First Health filed a reply brief in support of its motion on August 7, 2023. (ECF No. 32).

For the following reasons, First Health's Motion for Partial Summary Judgment is **GRANTED**. MMO's Motion for Leave to File an Amended Answer and Third Party Claim, Motion to Extend the Case Schedule, and Motion for Re-Assignment are **DENIED.**

I.  **FACTUAL BACKGROUND**

   A.  **The Agreement**

On May 1, 1997, First Health entered into a Medical Cost Management Services Agreement ("the Agreement") with MMO. (ECF No. 1–2, PageID #6).[1] First Health agreed to provide Medical Cost Management Services to MMO including access to First Health's preferred provider organization networks in exchange for MMO's payment of certain access fees, including a $1 million annual minimum. (ECF No. 1–2, PageID #6–8; ECF No. 4, PageID #125–26).

Section 5.1 of the Agreement addresses fees owed to First Health in exchange for the Medical Cost Management Services. (*Id.* at PageID #9). Section 5.1 states, "[I]n no event will the amount of [First Health]'s fees paid by [MMO] in any agreement year be less than one million dollars ($1,000,000)." (*Id.*). Section 6.1 of the Agreement states that the original term of the Agreement was May 1, 1997 through April 30, 2000, and that the Agreement automatically renews for consecutive one-year terms unless terminated. (*Id.* at PageID #10). Section 6.1 was most recently amended in 2009 by a Seventh Amendment: "The Term of this Agreement is for one (1) year beginning May 1, 2009 and ending April 30, 2010 (each year, an "Agreement Year") and will

---

[1] In fact, HealthCare COMPARE Corp. ("HCCC") entered into the Agreement with MMO on May 1, 1997. (ECF No. 1-2, PageID #6). HCCC is the predecessor in interest to First Health. (ECF No. 1-3, PageID #49). An amendment on December 1, 1998, acknowledged that all references to HCCC in the Agreement are replaced with First Health. (*Id.*). The parties do not dispute that First Health is a party to the Agreement with the right to enforce its terms. (ECF No. 4, PageID #124).

automatically renew for consecutive one (1) year terms (each a "Term") thereafter, unless terminated . . . ." (ECF No. 1–9, PageID #97). Section 10.5 of the Agreement provides that the Agreement is governed by and construed in accordance with the laws of the State of Illinois. (ECF No. 1–2, PageID #14).

> **B.** **The MMO-AXA Agreement and the Aetna-AXA Agreement**

In June 2018, MMO entered into a Master Claims Service and Management Agreement (the "MMO-AXA Agreement") with AXA Assistance USA, Inc. ("AXA"). (ECF No. 28–1, PageID #581). AXA agreed to provide MMO access to Aetna Life Insurance Company's ("Aetna Life") national provider network and some claims management services. (*Id.* at PageID #608). The MMO-AXA Agreement states that Aetna Life's Open Choice Network must be the exclusive provider of network access to MMO for MMO's customers' non-Ohio claims, with narrow exceptions. (*Id.* at PageID #610). Aetna Life and AXA then entered into their own Master Service Agreement (the "Aetna-AXA Agreement"), of which MMO is a third-party beneficiary. (ECF No. 28, PageID #562). The Aetna-AXA Agreement states that Aetna Life will receive claims from MMO arising out of services received by MMO members from providers in Aetna Life's Open Choice Network, and Aetna Life will reprice those claims at their negotiated rates. (*Id.*).

After entering into the MMO-AXA Agreement, MMO shifted its network usage for claims outside of Ohio away from First Health and to Aetna Life. (ECF No. 28–1, PageID # 579). Aetna Life and First Health are affiliates that indirectly share a parent company: CVS Health Corporation. (ECF No. 20–1, Opp. to Mot. to File Amend. Answer, PageID #453–55).

> **C.** **Agreement Termination**

During each of the years ending April 30, 2020, and April 30, 2021, MMO admits that it paid First Health less than $1 million. (ECF No. 18–2, MMO Responses to Requests for

3

Admission, PageID #234). In the year ending April 30, 2020, MMO paid First Health $658,457.35. (ECF No. 18-3, PageID #238). First Health sent demand letters requesting additional payments from MMO pursuant to the Agreement. (ECF No. 18–3, PageID #238–39). MMO replied, asserting that there was no $1 million minimum fee owed under Section 5.1 of the Agreement. (*Id.*). By letter on December 28, 2020, MMO terminated the Agreement effective April 30, 2021. (ECF No. 18–4, PageID #241).

## II. FIRST HEALTH'S MOTION FOR SUMMARY JUDGMENT

On November 18, 2022, First Health filed its Complaint against MMO, alleging breach of contract, followed by an Amended Complaint on November 21, 2022. (ECF No. 1, PageID #1; ECF No. 4, PageID #123). On June 23, 2023, First Health filed its Motion for Partial Summary Judgment; it asserts that MMO breached its obligation under the Agreement and First Health is entitled to partial summary judgment on the issue of contract liability for payment of the total minimum fee owed in 2020 and 2021. (ECF No. 18, PageID #218). MMO opposed the Motion, to which First Health replied. (ECF No. 28, PageID #551; ECF No. 32, PageID #913).

Specifically, the parties dispute whether the undefined term "agreement year" in Section 5.1 applies to the years ending April 30, 2020, and April 30, 2021. (ECF No. 18–1, PageID #225–27; ECF No. 28, PageID #565–67). First Health contends that Section 5.1 imposed a minimum payment obligation for all years that the Agreement was in place, including the years ending April 30, 2020, and April 30, 2021. (ECF No. 18–1, PageID #225). MMO argues that the Seventh Amendment's definition of "Agreement Year" introduced a new meaning for the term "agreement year" used in the Section 5.1 fee provision. (ECF No. 1–9, PageID #97). MMO asserts that after the Seventh Amendment, only the years between May 1, 2009 and April 30, 2010 were "Agreement Years" subject to the minimum payment provision. (*Id.*). The Seventh Amendment

4

provides: "The Term of this Agreement is for one (1) year beginning May 1, 2009 and ending April 30, 2010 (each year, an "Agreement Year") and will automatically renew for consecutive one (1) year terms (each a "Term") thereafter, unless terminated . . . ." (ECF No. 1–9, PageID #97). First Health replies that MMO's reading of the Seventh Amendment is irreconcilable with later amendments, such as the Ninth and Tenth Amendments, which refer to "Terms" ending in April 30, 2016, and January 1, 2018, as "Agreement Years." (ECF No. 32, PageID #915).

A. **Motion Standard**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. The Rule states that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must support its motion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

When reviewing summary judgment motions, the court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party must make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the moving party meets its burden of

production, then the non-moving party must point to specific facts in the record that create a genuine issue of material fact for trial. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).

### B. Discussion

#### 1. Breach of Contract

Questions of contract construction and interpretation are resolved by the court as a matter of law. *Ill. Valley Asphalt, Inc. v. La Salle Nat'l Bank*, 369 N.E.2d 525, 528 (Ill. App. Ct. 1977). Contract construction and interpretation questions are, therefore, often suited to resolution by summary judgment. *Wolff v. Bethany N. Suburban Grp.*, 197 N.E.3d 77, 86 (Ill. App. Ct. 2021). The court's primary goal in interpreting a contract is to "give effect to the intention of the parties." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). "A contract, however, is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose." *Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 689 (Ill. 1958) (citing *Hartley v. Red Ball Transit Co.*, 176 N.E. 751 (Ill. 1931). Courts must initially determine, as a matter of law, "whether the language of a purported contract is ambiguous as to the parties' intent." *USG Interiors, Inc. v. Com. & Architectural Prods., Inc.*, 609 N.E.2d 811, 814 (Ill. App. Ct. 1993). If the terms of the contract are unambiguous, then courts must derive the parties' intent from the contract's terms alone. *Glenview v. Northfield Woods Water & Util. Co.*, 576 N.E.2d 238, 244 (Ill. App. Ct. 1991).

Contract terms are ambiguous when they are reasonably susceptible to more than one interpretation due to the indefiniteness of the language or because a term has multiple meanings. *Zurich Midwest, Inc. v. St. Paul Fire & Marine Ins. Co.*, 513 N.E.2d 59, 60 (Ill. App. Ct. 1987). A contract is not ambiguous if the court can ascertain its meaning from the general

contract language. *Glenview*, 576 N.E.2d at 244. Importantly, a contract term or provision is not ambiguous solely because the parties disagree about its meaning. *Id.*

Applying those principles to the parties' dispute, MMO's failure to pay First Health $1 million during the years endings April 30, 2020, and April 30, 2021, constituted a breach of its minimum payment obligation under Section 5.1 of the Agreement; the term "agreement year" is unambiguous and imposes a minimum payment obligation for each year the Agreement is in effect. At the time the Agreement was originally drafted, "agreement year" (undefined) appeared only in Section 5.1 and in the Appendices to the Agreement as "Agreement Year" (capitalized yet also undefined). (ECF No. 1–2, PageID #9, 38–43). Both Appendix I Local and Appendix I National reference Section 5.1 of the Agreement. (*Id.* at PageID #40, 43). The Appendices described the payment stipulated to in Section 5.1 as an "annual minimum." *Id.* According to Black's Law Dictionary, "annual" means "[o]ccuring once every year." *Annual*, *Black's Law Dictionary* (10th ed. 2014). This reference to Section 5.1 supports First Health's assertion that Section 5.1 was meant as a minimum payment for each year of the Agreement.

The term "agreement year" is also not reasonably susceptible to the meaning MMO seeks to apply. MMO argues that the Seventh Amendment limited an "Agreement Year" to only the year between May 1, 2009 and April 30, 2010, and that other years are "Terms." (ECF No. 28, PageID #566). However, that position is undone by plain language of the Agreement; the Seventh Amendment states that "each year" is meant to be an "Agreement Year." (ECF No. 1-9, PageID #97). That indicates to the Court an intent to incorporate more than just the year ending April 30, 2010 into the term "Agreement Year." (ECF No. 1–9, PageID # 97).

Section 6.1 of the Agreement supports this conclusion. Section 6.1 states, "The Term of this Agreement is for three (3) years beginning May 1, 1997 and ending April 20, 2000 and

automatically renews for consecutive one (1) year terms thereafter . . . ." (ECF No. 1-2, PageID #10). Though the capitalized word "Term" is undefined, giving it its ordinary meaning—here, the temporal scope of the agreement—is consistent with the way it is used in the Seventh Amendment. There, Section 6.1 is replaced with, "6.1 <u>Term</u>. The term of this Agreement is for one (1) year beginning May 1, 2009 and ending April 30, 2010 (each year, an "Agreement Year") and will automatically renew for consecutive one (1) year terms (each a "Term") thereafter . . . ." (ECF No. 1-9, PageID #97). Again, giving "Term" its ordinary meaning, the parties again referred to the "Term" as the full scope of time that would pass while the Agreement was in effect, and "Agreement Year" to refer to each year that occurred during the Term. Since the Agreement could be freely terminated by either party on six-month's notice, each year is a "Term" because there was no guarantee that Agreement would be in effect the following year; until the termination period expired each year, each year became both the Agreement's new "Term" and a new "Agreement Year" in which MMO had minimum payment obligations. (ECF No. 1-2, PageID #10–11 (detailing methods for termination of the Agreement at Sections 6.2 and 6.3)). Where the "Term" identified in Section 6.1 is simply the duration of an "Agreement Year," both terms are harmonious and take no meaning away from one another. *See Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683 (Ill. 1958) (explaining that courts must construe a contract as a whole and give meaning and effect to every provision therein when possible).

The parties subsequent use of "Agreement Year" also demonstrates that "Agreement Year" was meant to encompass more than just the single year period from May 1, 2009 to April 30, 2010. The Ninth Amendment, entered into on May 1, 2013, used the term "Agreement Year" to refer to years after 2016. (ECF No. 1–11, PageID #113). The Tenth Amendment to the Agreement was entered into on May 1, 2015. (ECF No. 1–12, PageID #116). The Appendix I - Schedule of Fees

8

set out in the Tenth Amendment provided: "For each Agreement Year beginning January 1, 2018 . . . ." (*Id.* at PageID #119). Each of these later provisions contradicts MMO's claim that only the year between May 1, 2009, and April 30, 2010, was an "agreement year" to which the minimum fee provision applied. Moreover, there is no evidence before the court supporting an interpretation in which "Term" refers to some years and "Agreement Year" refers to others. The plain meaning and use of "agreement year" throughout the contract and later amendments demonstrates that the parties intended "agreement year" to describe any year that the Agreement remained in effect.

The term "agreement year" is unambiguous and the parties' intent must be derived from the language of the Agreement alone. Section 5.1 imposes a minimum payment obligation on MMO for each year the Agreement was valid. MMO is therefore liable for the failure to pay the minimum required fees to First Health in the years ending April 30, 2020 and April 30, 2021, unless one of MMO's affirmative defenses could excuse MMO's nonperformance.

### 2. MMO's Affirmative Defenses

#### a. Failure to Mitigate Damages

First Health must also overcome MMO's affirmative defenses to show that it is entitled to summary judgment as to MMO's liability under the Agreement. *See, e.g.*, *Perry v. Autozoners, LLC*, 954 F. Supp. 2d 599 (W.D. Ky. 2013) (finding that an employer's affirmative defense precluded summary judgment in an employee's favor). First, MMO's Answer (and proposed Amended Answer) allege that First Health failed to mitigate its damages. (ECF No. 10, PageID #152; ECF No. 23-1, PageID #504). MMO acknowledges that the MMO-AXA Agreement contributed to the decrease in fees paid to First Health under the Agreement. (ECF No. 28–1, PageID #579). However, MMO notes that First Health knew of the MMO-AXA Agreement in 2018, long before MMO's alleged breach of the minimum payment provision of Section 5.1 of the

9

Agreement in 2020 and 2021.  (ECF No. 28–6, PageID #886; ECF No. 4, PageID #128).  MMO alleges a genuine dispute of material fact regarding the amount to which First Health is entitled under the Agreement where First Health did nothing to mitigate its damages, despite awareness of MMO's alternative agreement for services with AXA and Aetna Life.  (ECF No. 28, PageID #569).

The failure to mitigate damages is an affirmative defense that must be pleaded and proved by the defendant.  *Boyer v. Buol Props.*, 22 N.E.3d 389, 404 (Ill. App. Ct. 2014).  An injured party has a duty to exercise reasonable diligence and ordinary care to minimize its damages.  *Holland v. Schwan's Home Serv., Inc.*, 992 N.E.2d 43, 87 (Ill. App. Ct. 2013).  "A duty to mitigate damages arises when the party upon whom the duty is impressed is aware of facts which make the duty to mitigate necessary."  *Cont'l Concrete Pipe Corp. v. Century Rd. Builders, Inc.*, 552 N.E.2d 1032, 1042 (Ill. App. Ct. 1990).

There was no means by which First Health could have mitigated the damages claimed in this action, regardless of when it learned about the MMO-AXA Agreement.  First Health was entitled to a minimum payment under the Agreement that was not fulfilled by MMO.  Both First Health and MMO are sophisticated parties that entered into a bargained-for exchange when they consented to the Agreement's terms.  First Health is not seeking damages in the amount of all the fees they could have received had MMO not entered a third-party agreement, but instead only the "bargained for" minimum payment set out in the Agreement.  (ECF No. 32, PageID #918).  First Health was still providing services and receiving fees from MMO in the years ending April 30, 2020 and 2021.  (ECF No. 4, PageID #128–29).  Despite the ability to terminate the Agreement by giving six-month's notice to First Health, MMO did not terminate, causing First Health to continue its performance.  (*See* ECF No. 1-2, PageID #10–11).  Given First Health's performance,

10

MMO's failure to pay the minimum fee, and the lack of ambiguity in Section 5.1, First Health had no duty to mitigate the damages it now seeks in this action.

b. Frustration of Purpose"

MMO's proposed Amended Answer includes a "frustration of purpose" defense. (ECF No. 23-1, PageID #504). The defense of frustration of purpose is not viable, however, unless MMO can show the "frustrating event" was not reasonably foreseeable.

The doctrine of commercial frustration is an affirmative defense to the enforcement of a contract, but "should not be applied liberally." *Am. Nat'l Bank v. Richoz*, 545 N.E.2d 550, 553 (Ill. App. Ct. 1989). Illinois courts apply a rigorous two-part test that requires a party to show: (1) the frustrating event was not reasonably foreseeable; and (2) the value of counter performance has been totally or nearly totally destroyed by the frustrating event. *N. Ill. Gas Co. v. Energy Coop., Inc.*, 461 N.E.2d 1049, 1059 (Ill. App. Ct. 1984) (citing *Smith v. Roberts*, 370 N.E.2d 271, 273 (Ill. App. Ct. 1977)).

MMO admits that the MMO-AXA Agreement shifted fees away from First Health's network. (ECF No. 23–1, PageID #508). However, this subsequent agreement cannot be considered a "frustrating event" that was unforeseeable when MMO itself entered into the agreement with AXA for network access and claims management services. (*Id.* at PageID #506). MMO concedes that both the MMO-AXA Agreement and the party's communications made it clear to MMO that they were obligated to use Aetna Life's networks and claims services with few exceptions. (*Id.*). MMO, as a sophisticated party, cannot claim that it did not reasonably foresee the effect the MMO-AXA Agreement would have on its use of First Health's network, concomitant fee payments, and the rest of its contractual obligations to First Health. Therefore, the doctrine of frustration of purpose does not preclude partial summary judgment in First Health's favor.

11

### c. Impracticability of Performance

The only other defense appearing in MMO's proposed Amended Answer claims that Plaintiff's claims are barred by the doctrine of impracticability of performance. (ECF No. 23-1, PageID #504). "Where, after a contract is made, performance by a party is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, duty to render performance is discharged." Restatement (Second) of Contracts § 261 (Am. Law. Inst. 1981). A party is expected to make reasonable efforts to surmount obstacles to performance, and performance is excused only if it is impracticable despite reasonable efforts. *N. Ill. Gas Co.,* 461 N.E.2d at 1059 (citing Restatement (Second) of Contracts § 261 (Am. Law Inst. 1981)).

The defense of impracticability of performance is not available when MMO cannot show that performance was made impracticable without its fault. MMO's decision to contract with AXA for network and claims management services led to the decrease in the fees it paid to First Health. (ECF No. 23–1, PageID #508). As MMO voluntarily entered into this subsequent agreement, with exclusivity provisions, it cannot show that the minimum fee owed to First Health was made impracticable without also exposing its fault for such impracticability. Therefore, this affirmative defense does not preclude partial summary judgment in First Health's favor.

### 3. *Discovery*

Finally, MMO requests additional time to conduct discovery to investigate Aetna Life's corporate relationship with First Health to support its affirmative defenses of mitigation, frustration of purpose, and impracticability of performance. (ECF No. 28, PageID #571–72). Federal Rule of Civil Procedure 56(d) provides:

> (d) **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The purpose behind Rule 56(d) is to ensure that parties receive "'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). A party requesting additional discovery under Rule 56(d) must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000).

The Sixth Circuit directs courts to consider five factors (the *Plott* factors) when deciding a Rule 56(d) motion:

> (1) when the nonmovant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the movant was dilatory in its discovery efforts; and (5) whether the adverse party was responsive to discovery requests.

*Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010) (citing *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995)).

In this case, the second *Plott* factor is dispositive. "A court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided." *In re Bayer Healthcare & Merial Ltd. Flea Control Prod. Mktg. & Sales Pracs. Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014). Here, the Court has already determined that MMO's mitigation, frustration of purpose, and impracticability of performance defenses do not preclude partial summary judgment in First Health's favor because the Agreement unambiguously obligates

13

MMO to pay a minimum fee in each "agreement year."' As such, additional discovery regarding First Health's relationship with third parties AXA and Aetna Life is irrelevant to the underlying issue."

### C. Conclusion

First Health is entitled to partial summary judgment where Section 5.1 of the Agreement unambiguously required a minimum payment in any "agreement year" and the term applied to each year the Agreement was valid. The Agreement was valid in the years ending April 30, 2020, and April 30, 2021, and a minimum payment of $1 million was not paid. (ECF No. 18–2, PageID #234). MMO does not raise affirmative defenses that preclude partial summary judgment in favor of First Health. The affirmative defenses of mitigation, frustration of purpose, and impracticability of performance are inapplicable where First Health's damages arose as a result of MMO's subsequent third-party contract. Additional discovery is not warranted where MMO requests time for the purpose of developing affirmative defenses that are not relevant to the underlying issue. Accordingly, First Health's Motion for Partial Summary Judgment (ECF No. 18) is **GRANTED**.

### III. MMO'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER AND THIRD-PARTY COMPLAINT, *INSTANTER* (ECF NO. 16)

This Court's Order awarding partial summary judgment to First Health also resolves MMO's Motion for Leave to File an Amended Answer and Third-Party Claim; this Court has determined that none of MMO's affirmative defenses preclude partial summary judgment in First Health's favor, and that MMO's contractual relationship with Aetna Life (which is the subject of MMO's proposed Third-Party Complaint) is irrelevant to its breach of the Agreement that is the subject of this action. Nevertheless, for the sake of completeness, the Court will conduct the appropriate analysis.

### A. Legal Standard

Pleading amendments are governed by Fed. R. Civ. P. 15, and limited by the Court's case management schedule pursuant to Fed. R. Civ. P. 16. Rule 15(a)(2) provides that, in instances of amendment other than amending as a matter of course (within 21 days of service of the initial complaint), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

The Supreme Court provided guidance to district courts on how to address requests for leave to amend a pleading under Rule 15 in *Foman v. Davis*, 371 U.S. 178, 182 (1962), noting that courts may not deny an amendment request without explaining its reasoning for doing so, and clarifying the grounds that could justify denial of such a request:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. *See generally*, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, ***futility of the amendment***, etc.—the leave should, as the rule requires, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules."

#### 1. MMO's Proposed Affirmative Defenses

Typically, the district court determines whether a pleading amendment would be futile if the amendment could not survive a Rule 12(b)(6) motion to dismiss. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980). While neither *Twombly* nor *Iqbal* address the detail required in a defendant's affirmative defenses, other district courts have applied a "legally sufficient"

15

standard; a proposed affirmative defense does not need to have detailed factual support, but rather, must assert a legally viable defense to the claims against the defendant. *See, e.g.*, *Montgomery v. Wyeth*, 580 F.3d 455, 468 (6th Cir. 2009) (holding post-*Iqbal* that the "Federal Rules of Civil Procedure do not require a heightened pleading standard for a statute of repose defense"); *Jones v. Allen*, No. 2:11-cv-380, 2014 WL 12577014, at *2 (S.D. Ohio Dec. 8, 2014) (applying the "legally sufficient standard"); *Sprint Sols., Inc. v. Shoukry*, No. 2:14-CV-00127, 2014 WL 5469877, at *3 (S.D. Ohio Oct. 28, 2014) (striking an affirmative defense if doing so "would serve the purposes of justice and if the defense is insufficient as a matter of law").

Here, MMO's affirmative defenses are not legally sufficient. First Health cannot mitigate its damages incurred due to MMO's failure to pay a minimum annual fee; the minimum annual fee was bargained-for, and because it is a "minimum," it is, by definition, the least amount possible that First Health could reasonably expect to receive for the services it continued providing to MMO until April 30, 2021, when MMO terminated the Agreement.[2] MMO's other two defenses—frustration of purpose and impracticability of performance—are both invalid because the MMO-AXA Agreement, which was entered into by MMO at a time when MMO knew it had obligations to First Health under a different contract, is the reason for MMO's nonperformance. The frustrating event and the issue that made MMO's performance impracticable (the MMO-AXA Agreement) was caused directly by MMO. Therefore, MMO's proposed new affirmative defenses are legally insufficient, and permitting MMO to amend its answer to include them would be futile.

        2.     *MMO's Proposed Third-Party Complaint against Aetna Life*

MMO has also sought leave to file a Third-Party Complaint against proposed new party Aetna Life. (ECF No. 16). Under Fed. R. Civ. P. 14(a)(1), a defendant may serve a complaint on

---

[2] "Minimum" means "the least quantity assignable, admissible, or possible." *Minimum*, *Merriam-Webster's Dictionary* (2024), https://perma.cc/KYB6-N6TQ.

a nonparty "who is or may be liable to it for all or part of the claim against it." A defendant may file a third-party complaint within 14 days of filing its answer, or if outside of the 14-day window, seek leave of court to do so. *Id.* The decision of whether to grant a defendant leave to file a third-party complaint is within the district court's discretion. *Gen. Elec. Co. v. Irvin*, 274 F.2d 175, 178 (6th Cir. 1960). "Relevant factors for the district court to consider include balancing 'the avoiding of duplicative litigation [with] ensuring that parties already before the Court receive reasonably expeditious adjudication.'" *Doe v. Williamsburg Indep. Sch. Dist.*, No. 6:15-cv-75, 2016 WL 1735850, at *2 (E.D. Ky. May 2, 2016) (citing *Diar v. Genesco, Inc.*, 102 F.R.D. 288, 290 (N.D. Ohio 1984). Timeliness is also a factor. *Id.* (citing *Irvin*, 274 F.2d at 178). Finally, the third-party complaint must seek to shift liability for the plaintiff's claim to the third-party defendant, since that is the purpose of Rule 14 impleading. *Id.* (quoting *Baker v. Pierce*, 812 F.2d 1406 (table), at *2 n.2 (6th Cir. 1987)).

MMO's proposed Third-Party Complaint against Aetna Life claims that Aetna Life has been unjustly enriched by the combination of the MMO-AXA Agreement and the Aetna-AXA Agreement. (ECF No. 23-1, PageID #509). MMO states in its Third-Party Complaint:

> To the extent that MMO is liable to First Health for not paying First Health minimum fees of $1 million for network access for any period after June, 2018, MMO should be entitled to collect such amount from Aetna, as such liability would result from the conduct of First Health's affiliate, Aetna, which collected from MMO in excess of $1 million in network access fees in each relevant year pursuant to the AXA-Aetna-MMO arrangement.

(*Id.* at PageID #509–10). But, Aetna Life is not a party to the Agreement subject to this action, and neither the MMO-AXA Agreement nor the Aetna-AXA Agreement is related to the Agreement at issue here. As First Health explains in its brief in opposition to MMO's Motion for Leave, First Health is not a subsidiary or "controlled affiliate" of Aetna Life, as MMO's proposed Third-Party Complaint claims. (*compare* ECF No. 20, PageID #253–54; ECF No. 23-1, PageID

17

#508). Rather, publicly available documents establish that "First Health is the subsidiary of Aetna Health Holdings, LLC, which in turn is a subsidiary of Aetna, Inc., which in turn is a subsidiary of CVS Pharmacy, Inc., which in turn is a subsidiary of the public traded holding company CVS Health Corporation." (ECF No. 20, PageID #254; ECF No. 20-1, CVS Health Corp. Form 10-K, PageID #455). This Court takes judicial notice of these published facts. *See In re Everyware Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837 (S.D. Ohio 2016) (taking judicial notice of SEC filings). Indeed, if First Health and Aetna Life are affiliated, such affiliation is tenuous.

MMO does not allege that Aetna Life or First Health controlled the business judgment of the other, nor that the Agreement between MMO and First Health was intended to benefit from the MMO-AXA Agreement, nor vice versa. These contracts are unrelated to one another. Therefore, there is no way for damages attributable to MMO to flow to Aetna Life or any other entity. Rather, in granting First Health's Motion for Partial Summary Judgment, this Court has determined that MMO alone is liable to First Health for the unpaid minimum fees. Accordingly, MMO's Motion for Leave to File Third-Party Claim is **DENIED**.

## IV.  MMO'S MOTION FOR RE-ASSIGNMENT (ECF NO. 21)

MMO has also moved this Court to reassign this case to Judge David Ruiz, who is overseeing a matter that MMO believes is related to this one: *Medical Mutual of Ohio v. AXA Assistance USA, Inc., et al.*, case no. 1:22-cv-01313 (the "*Aetna Life* Case"), which was filed on July 25, 2022. (ECF No. 21). First Health opposes this Motion, since the *Aetna Life* Case concerns different parties and a different contract, which are unrelated to the rights and responsibilities of the parties to the Agreement at issue here. (ECF No. 25). On Reply, MMO states that reassignment is needed to allow MMO pursue its defenses to First Health's claim, and that parties in related cases can be different yet the matter be reassigned. (ECF No. 27).

The merits of the parties' arguments aside, Local Rule 3.1(B)(3) provides that "A case may be re-assigned as related to an earlier assigned case with the concurrence of both the transferee and the transferor Judicial Officers, with or without a motion/notice by counsel." Here, the transferee Judge, Judge David Ruiz, has declined to accept the transfer of this case because, as this Court has found, this case and the *Aetna Life* Case do not arise from the same or substantially identical transaction, happening, or event. Rather, these matters involve different contracts, between different parties, entered into two decades apart, and different questions of law and fact. Finally, to the extent that MMO is the Plaintiff in the *Aetna Life* Case, it was aware of any relation between these two cases as soon as this case was filed, rendering MMO's request untimely.

Accordingly, MMO's Motion for Re-Assignment (ECF No. 21) is **DENIED.**

## V. MMO'S MOTION TO EXTEND CASE SCHEDULE (ECF NO. 22)

MMO has asked the Court to extend the case management schedule to accommodate the additional discovery MMO requested. That Motion is **DENIED.** The Court notes that all discovery and dispositive motions deadlines have passed, and the only issue requiring resolution following the filing of this Order is the amount of damages owed to First Health with respect to the agreement year ending April 30, 2021. As such the Court will set (by separate Order) a telephone status conference to discuss the needs of the parties with respect to the sole remaining issue before the Court. The parties shall be prepared to discuss the possibility of referring this matter to the assigned magistrate judge for mediation at the telephone status conference.

## VI. CONCLUSION

First Health's Motion for Partial Summary Judgment (ECF No. 18) is **GRANTED.** Partial summary judgment is hereby entered in favor of Plaintiff First Health Group Corp. Judgment is hereby **GRANTED** in favor of Plaintiff First Health Group Corp. as to Count I of the Amended

Complaint in the amount of $341,542.65, plus interest, for the agreement year ending April 30, 2020. The damages owed to First Health with respect to the agreement year ending April 30, 2021, are unresolved and will be the subject of future proceedings.

MMO's Motion for Leave to File an Amended Answer and Third-Party Claim is hereby **DENIED**, since the proposed amendments would be futile.

MMO's Motion for Re-Assignment is **DENIED** because the proposed transferee judicial officer will not accept re-assignment of this case.

MMO's Motion to Extend Case Schedule is **DENIED** because the only remaining issue in this case is the amount of damages relative to the agreement year ending April 30, 2021. Therefore, the requested extension is unnecessary. Additional deadlines relative to First Health's damages incurred in the agreement year ending April 30, 2021, shall be set by separate Order.

**IT IS SO ORDERED.**

**Date: April 11, 2024**

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**