## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| FIRST HEALTH GROUP CORP., | ) | CASE NO. 1:22-cv-02090 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | |
| MEDICAL MUTUAL OF OHIO, INC., | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER RESOLVING ECF NOS. 36 & 38** |

Before the Court are cross motions for summary judgment on damages. (ECF No. 36, Def.'s Mot. for Summ. J.; ECF No. 38, Pl.'s Mot. for Summ. J.). The parties agree that the 2021 shortfall amount—the amount that remains unpaid by Defendant Medical Mutual of Ohio ("MMO") during the 2021 agreement year—is $807,993.19. (ECF No. 36, PageID # 983; ECF No. 42, Pl. Opp'n to Def.'s Mot. for Summ. J., PageID #1047–48). Together with the 2020 agreement year shortfall of $341,542.65, the total shortfall for both years of $1,149,535.84. (ECF No. 36-1, PageID #983; *see* ECF No. 34, Order Resolving ECF Nos. 16, 18, 21 & 22, PageID #971).

This leaves two issues for this Court to resolve: (1) the date from which the agreed upon 1 1/2% simple interest began to run on each shortfall amount; and (2) whether Plaintiff First Health Group Corp. ("First Health") is entitled to its costs, fees, and expenses, including attorney fees, incurred in bringing this action. For the following reasons, the Court **GRANTS** summary judgment in favor of First Health on the issue of attorney's fees and costs. The Court also **DENIES** MMO's motion to the extent it argues that interest accrues from the date of First Health's demand letters.

I.     **FACTUAL BACKGROUND**

The Court incorporates as if fully rewritten the "Factual Background" section from its April 11, 2024 Order (ECF No. 34), which explains the contractual relationship between the parties, that a $1 million minimum fee was due in the 2020 and 2021 agreement years, and that MMO did not satisfy those minimum fee obligations. For the sake of this Order, the parties agree that MMO owes First Health $1,149,535.84 in shortfall amounts.

There are three provisions in the Agreement at issue here. The first two come from Article 5, entitled "PAYMENT." Section 5.1 concerns the minimum fee. It states:

> [MMO] will pay [First Health] fees for all Medical Cost Management Services provided pursuant to this Agreement as set forth in the Schedules of Fees which are attached to and incorporated into this Agreement as Appendix I – Local and Appendix I – National. Notwithstanding anything to the contrary in this Agreement, including any Supplements or Appendices, in no event will the amount of [First Health's] fees paid by [MMO] in any agreement year be less than one million dollars ($1,000,000).

(ECF No. 1-2, PageID #9). Section 5.4 covers non-payment of fees. It states, in pertinent part:

> [MMO] will pay for the services rendered by [First Health] in accordance with this section 5.4 and 5.7. Payments due [First Health] which are more than fifteen (15) days in arrears shall bear interest at the rate of one and one-half percent (1 1/2%) per month. In addition to interest, [MMO] agrees to pay all expenses, costs, and charges relating to the collection, including attorneys' fees incurred, whether or not suit is filed for payment.

(*Id.*).[1]

Article 6 of the Agreement is titled, "TERM AND TERMINATION." Sections 6.8 and 6.8.1 provide:

> 6.8    Upon the effective date of the termination of this Agreement for any reason:
>> 6.8.1   [MMO] or [First Health] will promptly pay to the other party all monies due hereunder. Monies not so paid under the terms of this Agreement will accrue interest at a rate of one and one-half percent (1 1/2%) per month until such obligations are satisfied.

---

[1] The above-quoted Section 5.4 reflects the change to this section in the second amendment of the Agreement.

(*Id.* at PageID #12).

MMO moved for summary judgment concerning the interest accrual date. (ECF No. 36-1, PageID #979). MMO claims that Section 6.8.1 applies to the accrual of interest on the minimum fee shortfalls, and that Section 5.4 only concerns payments for daily and monthly repriced claims. (*Id.* at PageID #987). MMO observes, however, that there is no interest accrual date stated in Section 6.8.1; it reasons that, since First Health demanded the 2020 shortfall on August 4, 2020, and the 2021 shortfall on March 8, 2022, interest on each shortfall amount should accrue from each demand-letter date. MMO also opposes First Health's motion for summary judgment concerning the payment of attorney's fees. It asserts that, since 6.8.1 applies to the shortfalls, 6.8.1 does not include fee-shifting language, and that First Health should not receive payment for its attorney's fees.

First Health relies on Section 5.4 for its costs, expenses, and attorney's fees and the date from which interest began to accrue on the minimum fees. (ECF No. 38-1, PageID #1014–15; ECF No. 42, PageID #1049–51). First Health notes that Section 6.8.1 merely "affirms that payments in arrears will accrue interest even after the Agreement is terminated." (ECF No. 42, PageID #1049, n.3). As far as when the minimum fee became due, First Health explains that Section 5.1 requires payment of the minimum fee "in" an agreement year, meaning that the minimum fee was due before the end of the agreement year in question (each ending on April 30) and became "in arrears" on May 1 of each year. (*Id.* at PageID #1050). Since Section 5.4 governs payment of the minimum fee, and since Section 5.4 provides for the shifting of fees and costs, including attorney's fees, First Health maintains that it is entitled to those fees and costs. (*Id.* at PageID #1051–52).

3

**II.   MOTION STANDARD**

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  The Rule states that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must support its motion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

When reviewing summary judgment motions, the court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970).  A fact is "material" only if its resolution will affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party must make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  If the moving party meets its burden of production, then the non-moving party must point to specific facts in the record that create a genuine issue of material fact for trial.  *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).

**III.   DISCUSSION**

Questions of contract construction and interpretation are resolved by the court as a matter of law.  *Ill. Valley Asphalt, Inc. v. La Salle Nat'l Bank*, 369 N.E.2d 525, 528 (Ill. App. Ct. 1977).

4

Contract construction and interpretation questions are, therefore, often suited to resolution by summary judgment. *Wolff v. Bethany N. Suburban Grp.*, 197 N.E.3d 77, 86 (Ill. App. Ct. 2021). The court's primary goal in interpreting a contract is to "give effect to the intention of the parties." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). "A contract, however, is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose." *Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 689 (Ill. 1958) (citing *Hartley v. Red Ball Transit Co.*, 176 N.E. 751 (Ill. 1931). Courts must initially determine, as a matter of law, "whether the language of a purported contract is ambiguous as to the parties' intent." *USG Interiors, Inc. v. Com. & Architectural Prods., Inc.*, 609 N.E.2d 811, 814 (Ill. App. Ct. 1993). If the terms of the contract are unambiguous, then courts must derive the parties' intent from the contract's terms alone. *Glenview v. Northfield Woods Water & Util. Co.*, 576 N.E.2d 238, 244 (Ill. App. Ct. 1991).

Illinois courts generally enforce fee shifting provisions. *Pa. Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 227 (7th Cir. 1989). When attorney fees are "specifically authorized by the contract," it is "error for the trial court to fail to provide for them." *Myers v. Popp Enters., Inc.*, 576 N.E.2d 452, 457 (Ill. App. Ct. 1991). Still, an award of attorney's fees must be based on sufficiently specific language. *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 783–84 (Ill. App. Ct. 2005) (quoting *Thread & Gage Co. v. Kucinski*, 451 N.E.2d 1292, 1297–98 (Ill. App. Ct. 1983)) (concluding that a contract need not use the term "attorney fees" to form a valid fee-shifting provision).

Sections 5.4 and 6.8.1 are harmonious, and both apply to the interest calculation on the shortfall payments. First, Section 5.1 categorizes the minimum $1 million fee as part of the "fees for all Medical Cost Management *Services provided* pursuant to this Agreement." (ECF No. 1-2,

PageID #9) (emphasis added). Section 5.4, in turn, concerns payments for "*services rendered* by First Health in accordance with this Section 5.4 and Section 5.7[2]." (ECF No. 1-4, PageID #64). Interpreting the minimum fee as collectible only after termination, as MMO does by referring to Section 6.8.1, ignores that the minimum fee is for services rendered, which is collectible under Section 5.4. It is unquestionable that Section 5.4 applies to the minimum fee.

The next issue concerns when the minimum fee became due. MMO does not offer an answer to this question that involves Section 5.4; instead, MMO asserts that the minimum fee became due when First Health demanded payment. According to First Health, each minimum fee became due on May 1 because Section 5.1 requires the minimum fee to be paid "in" an agreement year. (ECF No. 42, PageID #1050). "In," First Health explains, is "a functional word to indicate inclusion, location, or position within limits." *In*, Merriam-Webster Dictionary (2025), https://perma.cc/YM9B-HS8M. In 2020 and 2021, when the minimum fees went unsatisfied, those amounts were "in arrears" on the first day of the next agreement year—May 1.

First Health's argument is persuasive. Section 5.1 states, "[I]n no event will the amount of HCCC's fees paid by [MMO] in any agreement year be less than one million dollars ($1,000,000)." (ECF No. 1.2, PageID #9). As the Court explained in its April 11, 2024 Order granting First Health summary judgment on liability, the Agreement's appendices "described the payment stipulated to in Section 5.1 as an 'annual minimum.'" (ECF No. 34, PageID #958). Thus, the minimum fee was intended to be "a minimum payment for each year of the Agreement." (*Id.*). Section 5.1's

---

[2] MMO relies on Section 5.7 to explain why the minimum fee is not collectible under 5.4. Section 5.7 concerns payment of "repriced claims," which MMO asserts does not include the minimum fee. (ECF No. 36-1, PageID #986–87). First Health argues that Section 5.4 governs more than repriced claims because Section 5.4 itself does not mention repriced claims, let alone limit collection to such claims. (ECF No. 42, PageID #1051–52). Indeed, Section 5.4 concerns "payments due," not "repriced claims due." (ECF No. 1-2, PageID #9). MMO's reading also ignores that the fees for services provided (including the minimum fee) referenced in Section 5.1 are listed under the heading, "PAYMENT," while Section 5.4 concerns "payments due." Section 5.4 is not limited to exclusive collection of fees for repriced claims, expressly or otherwise. The Court therefore does not address MMO's arguments concerning Section 5.7 further.

use of the phrase "in any agreement year" is consistent with the appendices' reference to an "annual minimum," which must be paid "in" the relevant agreement year. Since each agreement year ended on April 30, First Health is correct that any amount of the minimum fee remaining unpaid on May 1 became a "payment due" and "in arrears," triggering the collection provisions of Section 5.4.

Neither Section 5.4 nor 6.8.1 require or mention a demand letter; MMO acknowledges that 6.8.1 is devoid of any date upon which payment is due or from which interest accrues and asks the Court to read the demand letter requirement into the Agreement. (ECF No. 36-1, PageID #985). But MMO's interpretation of Section 6.8.1 suffers from several other problems. Chiefly, Section 6.8.1 only comes into play after termination, and it merely clarifies that interest on "monies due" continues to accrue at 1 1/2% until paid. (ECF No. 1-2, PageID #12). Beyond that, reading Section 5.4 out of the Agreement and relying upon 6.8.1 alone ignores Section 6.8.3, which explains the way Section 6.8 interacts with the rest of the Agreement:

> Termination of this Agreement will not affect any rights or obligations hereunder which have previously accrued, or which thereafter arise with respect to any occurrence prior to termination including all confidentiality obligations and such rights and obligations will continue to be governed by the terms of this Agreement.

(*Id.*). This is the reason that Section 6.8.1 does not include any details about the payment of "monies due"; Section 6.8.3 incorporates payment obligations and collections under Sections 5.1 and 5.4 that pre-date termination. Here, that includes MMO's obligation to pay the minimum fee, and First Health's rights to collect it once it is more than 15 days in arrears.

Reading all of these provisions together, the Court concludes that interest began to accrue 15 days after the minimum fee became in arrears: May 16, 2020, for the 2020 agreement year and May 16, 2021, for the 2021 agreement year. Since the minimum fee is a "payment due" under

7

Section 5.4, First Health is entitled to is "expenses, costs, and charges relating to the collection [of the shortfall amounts], including attorneys' fees."  (ECF No. 1-2, PageID #9).

VI. **CONCLUSION**

MMO's motion for summary judgment (ECF No. 36) is **DENIED**.  First Health's motion for summary judgment (ECF No. 38) is **GRANTED**.  First Health is granted judgment in the amount of $341,542.65, plus simple interest at a rate of 1 1/2% per month from May 16, 2020 (for the 2020 agreement year).  First Health is also granted judgment in the amount of $807,993.19, plus simple interest at a rate of 1 1/2% per month from May 16, 2021(for the 2021 agreement year).

First Health is awarded all of its expenses, costs, and charges relating to the collection of these amounts, including attorney's fees incurred, in an amount to be determined by separate order.  First Health shall file a motion to award these amounts accompanied by an affidavit concerning the amounts due by January 20, 2026.  If MMO opposes the amount to which First Health believes it is entitled, MMO shall file a brief in opposition by February 3, 2026.  First Health may file a reply by February 10, 2026.

**IT IS SO ORDERED.**

Date: December 16, 2025

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**

8